IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAPITAL ONE, N.A. f/k/a HIBERNIA NATIONAL BANK, § § § | | |
| Plaintiff, § § | | |
| v. § § | CIVIL NO. 4:10-CV-01707 | |
| O WAYNE MASSEY; TRAVIS MASSEY; HOUSTON PLANTS & GARDEN WORLD, INC.; OTWM PARTNERSHIP; and JONELL MASSEY, § § § § § § | | |
| Defendants. § § | | |

## MEMORANDUM OPINION

Pending before the court[1] is Plaintiff's Motion for Summary Judgment (Doc. 22). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED** pending an evidentiary hearing to determine damages.

## I. Background

Defendants O. Wayne Massey and Travis Massey (collectively, the "Borrowers") executed three promissory notes (collectively, the "Notes") in favor of Plaintiff.[2] In connection with the Notes, the Borrowers also executed three Interest Rate Swap Transactions

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Doc. 19.

[2] Doc. 22-3, Plaintiff's Ex. A-2, Promissory Note; Doc. 22-4, Plaintiff's Ex. A-3, Promissory Note; Doc. 22-4, Plaintiff's Ex. A-3, Promissory Note.

(collectively, the "Swaps").[3] Defendants Houston Plants & Garden World, Inc., OTWN Partnership, and Jonell Massey (collectively, the "Guarantors") executed guaranty agreements (the "Guaranties") which guaranteed the full amount of the indebtedness incurred by the Borrowers to Plaintiff.[4] The Guaranties were unconditional, that is, the only condition precedent to their enforcement was the Borrowers' default on the debt owed to Plaintiff.[5]

The Notes and Guaranties are governed by Texas law.[6] The Swaps are governed by New York law.[7]

The entity for which the Notes were executed, Green Valley Growers, Inc. ("Green Valley Growers"), filed for Chapter 11 bankruptcy on March 9, 2009.[8] As a result of the bankruptcy, Green

---

[3]   Doc. 22-9, Plaintiff's Ex. A-8, ISDA Master Agreement; Doc. 22-10, Plaintiff's Ex. A-8(a), Interest Rate Swap Agreement; Doc. 22-11, Plaintiff's Ex. A-8(b), Interest Rate Swap Agreement; Doc. 22-12, Plaintiff's Ex. A-8(c), Interest Rate Swap Agreement.

[4]   Doc. 22-6, Plaintiff's Ex. A-5, Guaranty Agreement executed by Houston Plants & Garden World, Inc.; Doc. 22-7, Plaintiff's Ex. A-6, Guaranty Agreement executed by OTWM Partnership; Doc 22-8, Plaintiff's Ex. A-7, Guaranty Agreement executed by Jonell Massey.

[5]   Doc. 22-6, Plaintiff's Ex. A-5, Guaranty Agreement executed by Houston Plants & Garden World, Inc., p. 1; Doc. 22-7, Plaintiff's Ex. A-6, Guaranty Agreement executed by OTWM Partnership, p. 1; Doc. 22-8, Plaintiff's Ex. A-7, Guaranty Agreement executed by Jonell Massey, p. 1.

[6]   Doc 22-3, Plaintiff's Ex. A-2, Promissory Note, p. 6; Doc 22-4, Plaintiff's Ex. A-3, Promissory Note, p. 6; Doc 22-5, Plaintiff's Ex. A-4, Promissory Note, p. 6; Doc. 22-6, Plaintiff's Ex. A-5, Guaranty Agreement executed by Houston Plants & Garden World, Inc., p. 5; Doc. 22-7, Plaintiff's Ex. A-6, Guaranty Agreement executed by OTWM Partnership, p. 5; Doc. 22-8, Plaintiff's Ex. A-7, Guaranty Agreement executed by Jonell Massey, p. 5.

[7]   Doc. 22-9, Plaintiff's Ex. A-8, ISDA Master Agreement, p. 18.

[8]   See Doc. 23, Defendants' Response to Motion for Summary Judgment, ¶ 45. The case is pending as a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case No. 09-31630.

Valley Growers was placed under a trustee, who sold its various assets at auction.[9] Plaintiff was also given leave by the bankruptcy judge to assert its rights against the assets it had taken as security.[10] In connection therewith, Plaintiff foreclosed on an Arkansas property in a separate suit against Borrowers and then itself purchased the property for a credit bid.[11]

The Borrowers defaulted on the Notes, and the Swaps were terminated early.[12] The Guarantors then defaulted on the Guaranties.[13] As of April 11, 2011, Plaintiff alleges that the amount owing on the three Notes is, in no particular order: 1) $9,339,645.96, with interest accruing at a rate of $1,223.82 per day; 2) $261,461.78, with interest accruing at $21.04 per day; and 3) $1,284,939.83, with interest accruing at $232.92 per day.[14] In addition, Plaintiff alleges that the Borrowers are liable for $528,051.76 as a result of early termination of the Swaps.[15]

---

[9] Doc. 23-6, Defendants' Ex. E, Notice of Distribution of Auction Proceeds.

[10] Doc. 23-5, Defendants' Ex. D, Relief From Automatic Stay.

[11] Doc. 23-3, Defendants' Ex. B, Report of Commissioner's Sale. These transactions by Plaintiff should have resulted in credits and offsets toward the total indebtedness at stake in the instant suit, a matter which is in dispute.

[12] See Doc. 23, Defendants' Response to Motion for Summary Judgment, ¶ 5. The record is unclear as to when default occurred in relation to the bankruptcy proceeding.

[13] See id.

[14] Doc. 22-1, Plaintiff's Ex. A, Affidavit of Larry Millard, pp. 5-6.

[15] Id. at 5. The record is unclear as to the timing of the early termination in relation to the bankruptcy proceeding.

## II. Legal Standards

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment

4

must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

**III. Analysis**

**A. Liability**

To recover under a promissory note or guaranty, a plaintiff must establish that a note existed, that the defendant signed the note, that the plaintiff was the legal owner of the note, and that a certain balance was owing on the note. Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1023 (5th Cir. 1995) (citing Clark v. Dedina, 658 S.W.2d 293, 295-96 (Tex. App.-Houston [1st Dist.] 1983, writ dism'd)). Defendants concede that Plaintiff has established these elements,[16] and that they are liable for breach with respect to the Notes and the Guaranties.[17] Therefore the court finds that Defendants are liable for their breach of the Notes and Guaranties.

Similarly, to recover for breach of contract with respect to the Swaps, Plaintiff must show that an enforceable contract existed, that Plaintiff tendered performance, that Defendants breached the contract, and that Plaintiff suffered damages as a result. WorldCom, Inc. v. Sandoval, 701 N.Y.S.2d 834, 836 (N.Y. Sup. Ct. 1999). Defendants concede that Plaintiff has established these elements[18] and that they are liable for breach of contract on the

---

[16] See Doc. 22-1, Plaintiff's Ex. A, Affidavit of Larry Millard; Doc 22-3, Plaintiff's Ex. A-2, Promissory Note; Doc 22-4, Plaintiff's Ex. A-3, Promissory Note; Doc 22-5, Plaintiff's Ex. A-4, Promissory Note; Doc. 22-6, Plaintiff's Ex. A-5, Guaranty Agreement executed by Houston Plants & Garden World, Inc.; Doc. 22-7, Plaintiff's Ex. A-6, Guaranty Agreement executed by OTWM Partnership; Plaintiff's Ex. A-7, Guaranty Agreement executed by Jonell Massey.

[17] See Doc. 23, Defendants' Response to Motion for Summary Judgment, ¶ 5.

[18] Doc. 22-9, Plaintiff's Ex. A-8, ISDA Master Agreement; Doc. 22-10, Plaintiff's Ex. A-8(a), Interest Rate Swap Agreement; Doc. 22-11, Plaintiff's Ex. A-8(b), Interest Rate Swap Agreement; Doc. 22-12, Plaintiff's Ex. A-8(c),

Swaps.[19]

The court, therefore, **GRANTS** Plaintiff's Motion for Summary Judgment with respect to liability for breach of the Notes, Guaranties, and Swaps.

### B. Damages

Defendants dispute the amount of damages to which Plaintiff is entitled as a result of Defendants' breach. Defendants allege four issues of material fact relating to whether or not the proper credits and offsets were applied to Borrowers' indebtedness: 1) that when Plaintiff issued an IRS form 1099-C, Cancellation of Debt ("1099-C") to Borrowers, it created an issue as to how much debt was cancelled; 2) that the sale of the Arkansas property for $990,000 in a related proceeding may not have been credited against the debt at issue in this suit; 3) that there is a dispute as to how much of Green Valley Grower's receivables have been collected; and 4) that there is a dispute as to whether certain of Green Valley Grower's sold assets were applied to the indebtedness.[20]

With respect to the first issue, a 1099-C is issued to comply with IRS reporting requirements. <u>I.R.S. Ltr. Rul. 2005-0207</u>, 2005 WL 3561135 (Dec. 30, 2005). The IRS does not view a 1099-C as a

---

Interest Rate Swap Agreement.

[19] See Doc. 23, Defendants' Response to Motion for Summary Judgment, ¶ 5.

[20] See Doc. 23, Defendants' Response to Motion for Summary Judgment, ¶ 51.

legal admission that a debtor is absolved from liability for a debt. <u>Id.</u> The IRS's interpretation of regulations over which it has authority are given great deference. <u>See</u> <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 843-45 (1984). Thus, this court adopts the view that a 1099-C does not discharge debtors from liability. Therefore, the fact that Plaintiff issued a 1099-C in relation to the Borrowers' indebtedness is irrelevant and does not raise a genuine issue of material fact in this suit.

With respect to the second, third, and fourth issues, Defendants allege that certain amounts may not have been properly credited. Plaintiff generally avers that all proper credits and offsets have been applied to the outstanding indebtedness and supports that statement in an affidavit from Larry Millard, a Vice President at Capital One, N.A., and the custodian of the records of Plaintiff.[21] Because the affidavit was made on personal knowledge by a person competent to testify on the matters stated, it is acceptable summary judgment evidence. Fed. R. Civ. P. 56(c)(4). Further, under Texas law, an affidavit from a bank employee which details the total amount owing on a note is sufficient to sustain an award of summary judgment, even if it does not go through the specific calculations by which the total was determined. <u>Hudspeth v. Investor Collection Servs. Ltd. P'ship</u>, 985 S.W.2d 477, 479 (Tex. App.-San Antonio 1998, no pet.). Plaintiffs have, therefore,

---

[21] Doc. 22-1, Plaintiff's Ex. A, Affidavit of Larry Millard, p. 2.

successfully met their burden under Federal Rule of Civil Procedure 56. The analysis must now turn to the evidence which Defendants have produced to determine whether it raises a genuine issue of material fact.

Defendants state a general belief that all credits and offsets have not been calculated into the total indebtedness. Belief is not valid summary judgment evidence; it therefore fails to raise a genuine issue of material fact as to damages owed. See Byers v. Dallas Morning News, Inc., 209 F.3d 419, 426-27 (5th Cir. 2000) (stating that a subjective belief that a plaintiff was discriminated against was not enough to raise a genuine issue of material fact).

Defendants submit an official report of sale for the Arkansas property which Plaintiff bought and which Plaintiff should have credited to Borrowers' indebtedness.[22] This report evidences that a sale occurred but does not speak to whether the purchase price was credited to the indebtedness. It therefore fails to raise a genuine issue of material fact as to damages.

Similarly, Defendants produce a record listing the amount of Green Valley Growers receivables at the time of that entity's bankruptcy and the order of the bankruptcy judge which allowed Plaintiff to assert its rights against Green Valley Growers'

---

[22] Doc. 23-3, Defendants' Ex. B, Report of Commissioner's Sale.

9

assets.[23] While nothing contained in these documents is challenged, neither addresses whether the amounts referenced within them have been properly credited. Each therefore fails to raise a genuine issue of material fact.

Finally, Defendants produce a record of the proceeds from an auction ordered by the Chapter 11 trustee of Green Valley Growers.[24] Again, while it is not disputed that Plaintiff received $350,000 as a result of this auction, the evidence produced does not speak as to whether said money was credited to the indebtedness. Therefore, this record fails to create a genuine issue of material fact.

Having exhausted Defendants' arguments and examined the summary judgment evidence produced, the court finds that Defendants have failed to raise a genuine issue of material fact on the issue of damages. Therefore, the court will award damages to Plaintiff in an amount to be determined at an evidentiary hearing on damages. Although Texas law does not require detailed calculations with respect to the amounts due, Plaintiff and Defendants should be prepared to demonstrate to a reasonable extent how they arrive at the amount of damages. In particular, Plaintiff must show that it has taken into account the credits and offsets entitled to Defendants as a result of the other proceedings referenced in the

---

[23] Doc. 23-4, Defendants' Ex. C, Schedule of Personal Property, p. 2; Doc. 23-5, Defendants' Ex. D, Relief from Automatic Stay.

[24] Doc. 23-6, Defendants' Ex. E, Notice of Distribution of Auction Proceeds.

briefs.

### C. Attorney's Fees

The Notes and Guaranties unambiguously provide that the Borrowers and Guarantors shall reimburse Plaintiff for attorney's fees and costs incurred in connection with pursuing its rights under the Notes and Guaranties.[25] Texas law recognizes and enforces such clauses as this one. See, e.g., F. R. Hernandez Const. & Supply Co., Inc. v. Nat'l Bank of Commerce of Brownsville, 578 S.W.2d 675, 677 (Tex. 1979). The Guaranties require that the Guarantors cover the costs of collecting on any indebtedness of the Borrower; Plaintiff is therefore entitled to attorney's fees and costs in relation to the amounts owed on the Swaps as well. Accordingly, the court finds that Plaintiff is entitled to reasonable attorney's fees and costs associated with this suit and the collection of Borrower's indebtedness. The amount of fees and costs awarded will be determined at the evidentiary hearing.

## IV. Conclusion

Based on the foregoing, the court **GRANTS** Plaintiff's Motion for Summary Judgment to the extent outlined above.

**SIGNED** this 1st day of August, 2011.

Nancy K. Johnson
United States Magistrate Judge

---

[25] Doc. 22-3, Plaintiff's Ex. A-2, Promissory Note, p. 5; Doc. 22-4, Plaintiff's Ex. A-3, Promissory Note, p. 5; Doc. 22-5, Plaintiff's Ex. A-4, Promissory Note, p. 5; Doc. 22-6, Plaintiff's Ex. A-5, Guaranty Agreement executed by Houston Plants & Garden World, Inc., pp. 5-6; Doc. 22-7, Plaintiff's Ex. A-6, Guaranty Agreement executed by OTWM Partnership, pp. 5-6; Plaintiff's Ex. A-7, Guaranty Agreement executed by Jonell Massey, pp. 5-6.